IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SARAH AHEARN )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>VILLAGE OF HOFFMAN ESTATES, )<br>A municipal corporation; )<br>ANNE MARIE WITT, )<br>A Hoffman Estates Police Officer; )<br>BRIAN O'SHEA, )<br>A Hoffman Estates Police Officer; )<br>)<br>Defendants. ) | JURY TRIAL DEMANDED |

## COMPLAINT

The Plaintiff, SARAH AHEARN, by and through her attorneys of DVORAK LAW OFFICES, LLC, hereby complains against Defendants VILLAGE OF HOFFMAN ESTATES, ANNE MARIE WITT, and BRIAN O'SHEA, stating as follows:

### JURISDICTION AND VENUE

1. The incident giving rise to the Complaint occurred in Hoffman Estates, Cook County, Illinois, located within the Northern District of Illinois, Eastern Division.

2. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983 et seq.; the Judicial Code, §§ 1331 and 1343(a); and the

1

Constitution of the United States, and pendent jurisdiction, as provided under 28 U.S.C. §1367(a).

3. Venue is proper under 28 U.S.C. § 1391(b) because, *inter alia*, the underlying events pertaining to the claims occurring primarily within the District.

## PARTIES

4. At the time of the incident, the Plaintiff, Sarah Ahearn, resided in Hoffman Estates, Cook County, Illinois.

5. At the time of the incident, Defendant Anne Marie Witt was a police officer with the Hoffman Estates Police Department, and she was at all times relevant to the allegations made in this Complaint, acting under color of law, and in the course and scope of her employment with the Village of Hoffman Estates.

6. At the time of the incident, Defendant Brian O'Shea was a police officer with the Hoffman Estates Police Department, and he was at all times relevant to the allegations made in this Complaint, acting under color of law, and in the course and scope of his employment with the Village of Hoffman Estates.

7. Defendant Village of Hoffman Estates is a governmental entity within the State of Illinois. Defendant Village of Hoffman Estates was the employer of Defendants Witt and O'Shea and is therefore liable for their actions on the state claims based on a respondeat superior basis of liability, and is named as an indemnifying agent on the federal claims.

8. On September 18, 2024, at approximately 11:30 a.m., the Plaintiff was driving her vehicle near the intersection of Harmon Boulevard and Crowfoot Circle in Hoffman Estates, Illinois.

9. Defendant Witt was near the intersection in an unmarked Hoffman Estates Police vehicle.

10. After the Plaintiff passed the intersection, Defendant Witt activated her emergency lights and initiated a traffic stop and pulled over the Plaintiff's vehicle.

11. The Plaintiff does not dispute that she did not come to a complete and full stop at the stop sign, and thus she does not bring a Section 1983 false arrest claim, since there would have been probable cause that she committed a minor traffic violation.

12. The Plaintiff informed Defendant Witt that the Plaintiff was on her way to pick her son up from school and that she cannot be late.

13. The Plaintiff was visibly emotional and informed Defendant Witt that she was having a bad day because her sister had committed suicide two days prior.

14. Defendant Witt began questioning the Plaintiff as to where her sister committed suicide.

15. The Plaintiff cooperated and answered Defendant Witt's questions.

16. Defendant Witt asked the Plaintiff if she was taking any drugs or medications and the Plaintiff indicated that she takes medication for depression and anxiety and that she is able to drive on her prescribed medications.

17. Defendant Witt asked if the Plaintiff consumed alcohol that day and the Plaintiff denied consuming any alcohol.

18. During the traffic stop, the Plaintiff continued crying, pleading with Defendant Witt that her young son was standing by himself, waiting for his mother to pick him up.

19. Defendant Witt then called for another officer to come to the scene, and the Plaintiff rolled up her window.

20. Defendant Witt asked the Plaintiff to roll down her window to ask what school the Plaintiff's son attended, and the Plaintiff complied and answered Defendant Witt's question.

21. The Plaintiff asked Defendant Witt for a breathalyzer test to prove she was not under the influence of alcohol, but Defendant Witt refused to administer one.

22. The Plaintiff then rolled her window back up while Defendant Witt waited for a second unit to arrive.

23. Throughout this interaction, the Plaintiff was wearing sunglasses that prevented Defendant Witt from seeing the Plaintiff's eyes.

24. Defendant Witt could not see the Plaintiff's eyes due to the Plaintiff wearing sunglasses and therefore could not have observed the Plaintiff to have glassy or droopy eyes.

25. Nevertheless, Defendant Witt lied in a police report that she filled out and submitted to prosecutors, claiming Defendant Witt "observed [the Plaintiff's]

4

eyes to be glassy and her eyelids to be droopy" upon making contact with the Plaintiff.

26. When Defendant O'Shea arrived on the scene, he spoke with the Plaintiff and asked her to step out of the vehicle.

27. The Plaintiff agreed to step out of the vehicle for a field sobriety test.

28. While Defendant Witt performed the tests, Defendant O'Shea stood to the side and spoke with the Plaintiff's boyfriend, who had arrived at the scene after picking up the Plaintiff's son from school.

29. Defendant O'Shea explained to the Plaintiff's boyfriend that he understood the Plaintiff was emotional because she was grieving her sister's death, and that this is something Defendant O'Shea "probably would have considered" had he been the one to pull the Plaintiff over, but that "this is [Defendant Witt's] show."

30. Throughout this time, the Plaintiff continued to express to Defendants her concern that her son was able to see her performing the sobriety tests and that this would be traumatizing for him.

31. The Plaintiff also expressed that this was all being done in her neighborhood, in front of her neighbors.

32. The Plaintiff then cooperated in taking field sobriety tests, and there was nothing about her performance on those tests that would have given a reasonable officer probable cause to believe the Plaintiff was under the influence of alcohol or illegal drugs.

33. Additionally, given the totality of the circumstances, Defendant Witt lacked probable cause to believe the Plaintiff was under the influence of alcohol or any illegal drugs.

34. Defendant O'Shea was present during the majority of the Plaintiff's interaction with Defendant Witt, including the administration of the field sobriety tests, and he also knew there was no probable cause that the Plaintiff was under the influence of any alcohol or illegal drugs.

35. Despite the above, Defendant Witt placed the Plaintiff in handcuffs, behind her back, and placed her under arrest at approximately 12:15 p.m.

36. While handcuffing the Plaintiff, Defendant Witt asked if the Plaintiff would be willing to go to the hospital for a blood and urine test.

37. Defendant Witt stated that, "if nothing comes back, then we'll let you go."

38. The Plaintiff then asked what sobriety test she had failed, and Defendant Witt responded that it was not a matter of whether the Plaintiff failed, but strictly whether Defendant Witt observed impairment.

39. Defendant Witt asked again whether the Plaintiff was willing to go to the hospital to give a blood and urine sample.

40. The Plaintiff appeared unsure and called for her boyfriend, asking if she should go to the hospital for the test.

41. Defendant Witt then explained that if the Plaintiff was taking her prescribed dosage as the Plaintiff explained, then the blood and urine tests would show that.

6

42. Defendant Witt further explained that taking the test is "up to [the Plaintiff]" and if she is willing to take the tests, Defendant Witt would take the Plaintiff to the hospital.

43. Defendant Witt then searched the Plaintiff's vehicle and collected the Plaintiff's prescription medication bottles.

44. When Defendant Witt returned to her police vehicle, she asked the Plaintiff again whether she was willing to go to the hospital to do a blood and urine test.

45. Defendant O'Shea then approached the Plaintiff and explained to the Plaintiff that if the Plaintiff submits to the blood and urine test and the results indicate that she does not have anything in her system, that this will help the Plaintiff in court.

46. Defendant Witt then explained that if the Plaintiff refused to submit to a blood and urine test, it would result in an automatic 12-month suspension of her driving license.

47. Defendant Witt then took the Plaintiff to the hospital in her police vehicle.

48. The Plaintiff was not free to go.

49. While in the examination room, Defendant Witt explained that if the tests showed only the presence of the Plaintiff's prescription medications, the Plaintiff could bring her doctor's prescription documentation to court. Defendant Witt told the Plaintiff that, because in her opinion the Plaintiff showed signs of impairment during the field tests, the Plaintiff would be

charged with a DUI regardless of whether the results of the blood and urine tests showed only the Plaintiff's prescription medications.

50. Defendant Witt then read the Warning to Motorist form to the Plaintiff.

51. This form confirmed what Defendant Witt already told her, *i.e.,* that if the Plaintiff refuses, then she will receive an automatic minimum 12-month suspension.

52. After reading the Warning to Motorist, Defendant Witt told the Plaintiff that if the Plaintiff takes the test and it comes back with only her prescribed medication, then the court would "drop it" and her license would not become suspended.

53. The Plaintiff was then called by the nurse to give a urine sample, and the Plaintiff provided a urine sample.

54. When it came time to take a blood sample, the Plaintiff initially indicated that she did not want to give a blood sample, and Defendant Witt again told the Plaintiff this refusal would result in a 12-month suspension to her license.

55. The Plaintiff then agreed to give the blood sample, indicating that she has no choice because she is a soccer mom and needs to be able to drive.

56. The nurse then put a needle into the Plaintiff's arm and withdrew blood.

57. The tests results were not immediately made available that day, but the results eventually came back negative for any alcohol or illegal drugs.

58. Defendant Witt, with the consent and awareness of Defendant O'Shea, took the Plaintiff, in restraints, to the hospital, where the Plaintiff was humiliated

and her privacy and bodily integrity invaded, even though both Defendants knew there was no probable cause or any other basis to arrest or charge the Plaintiff with DUI, nor was there probable cause, a warrant, exigent circumstances, or any other legal basis to request blood and urine testing from the Plaintiff at the pain of losing one's driving privileges if refused.

59. Defendant O'Shea had the duty and reasonable opportunity to prevent these abuses and constitutional violations, but he failed to intervene to stop these abuses and violations from occurring.

60. It was obvious or should have been obvious to both Defendant Witt and O'Shea that the Plaintiff was not under the influence of alcohol and/or illegal drugs.

61. That same day, upon information and belief, Defendant Witt submitted paperwork to have the Plaintiff's license suspended with no legal basis whatsoever.

62. Upon information and belief, Defendant O'Shea knew there was no legal basis to do so, as well, and he failed to intervene to prevent this from happening, even though he had a reasonable opportunity to do so.

63. On October 14, 2024, the Plaintiff's criminal defense attorney filed a Petition to Rescind Statutory Suspension, arguing, *inter alia*, that Defendant Witt did not have reasonable grounds to believe that the Plaintiff was driving under the influence of alcohol or drugs, and that she submitted to the required tests but the test sample of her blood alcohol concentration did not indicate a blood

concentration of .08 or more and/or any amount of an unlawful use of cannabis, controlled substance, or intoxicating compound.

64. On or about November 4, 2024, after an evidentiary hearing, the circuit court granted the Plaintiff's Petition to Rescind Statutory Suspension, based on the State having no reasonable grounds for the DUI arrest.

65. The court also reviewed the body-worn camera footage and found that Defendant Witt would not have been able to observe the Plaintiff's eyes due to the Plaintiff's sunglasses.

66. The court also indicated that the Plaintiff was able to perform all of Defendant Witt's tests and concluded that Defendant Witt did not have reasonable grounds to believe that the Plaintiff had done anything except for not stopping at a stop sign.

67. In Illinois, when a law enforcement officer submits paperwork to the Secretary of State to have driving privileges suspended related to a DUI arrest, such a suspension goes into effect 45 days from the date of the submission.

68. Thus, upon information and belief, the Plaintiff's license was suspended for at least 2 days based on the paperwork submitted by Defendant Witt.

69. However, the Plaintiff was faced with having her license suspended for a minimum of 6 months based on the submission of this paperwork, and if she had refused blood and urine testing at the hospital, this suspension would have been for a minimum of one year.

10

70. Furthermore, even after the petition to rescind the statutory summary suspension was denied, the Plaintiff was advised to keep the court order granting the petition because such a rescission of the suspension does not immediately take effect until the Secretary of State processes the paperwork, which can be days or weeks.

71. On or about April 4, 2025, the prosecutor dropped all of the criminal charges against the Plaintiff.

72. As a result of being falsely charged with a DUI and having to challenge the license suspension, the Plaintiff was forced to hire a criminal defense lawyer and paid him $3,500.

73. The Plaintiff was also forced to attend several court dates before the charges were dismissed.

74. As a result of the Defendants' actions, the Plaintiff suffered severe emotional distress, including severe humiliation and the aggravation of a pre-existing anxiety condition, as well as pecuniary damages, *e.g.*, attorney's fees, court fees, and medical/mental health bills.

75. The Plaintiff brings a Fourth Amendment illegal search and seizure claim and Fourteenth Amendment substantive due process claim against Defendant Witt for violating the Plaintiff's bodily integrity through coerced blood and urine tests and for extending her time in custody, as well as a failure to intervene claim against Defendant O'Shea.

76. The Plaintiff brings a state law malicious prosecution claim against the Defendant Village of Hoffman Estates, in addition to Defendants Witt and O'Shea for their significant roles in the criminal prosecution, for the malicious conduct of its agents and employees who, acting withing the course and scope of their employment, caused the Plaintiff to be prosecuted for DUI without probable cause or legal justification.

77. The Plaintiff brings a state law malicious prosecution claim against the Defendant Village of Hoffman Estates, in addition to Defendants Witt and O'Shea for their significant roles in the summary suspension proceedings, for the malicious conduct of its agents and employees who, acting withing the course and scope of their employment, caused the Plaintiff's license to be suspended without any legal basis of doing so.

78. The Plaintiff also seeks prejudgment interest in this case related to all of her damages, pecuniary or otherwise, and she will seek such interest from the Court after the entry of any judgment, or alternatively will seek such relief as part of her damages claim.

79. The Plaintiff seeks significant compensatory damages against all the Defendants, and punitive damages against Defendants Witt and O'Shea for their reckless and/or malicious actions.

80. If any judgment is obtained against Defendants Witt and/or O'Shea on any claim, the Plaintiff also seeks indemnification from Defendant Village of Hoffman Estates, except for punitive damages.

WHEREFORE, the Plaintiff, Sarah Ahearn, respectfully requests that this Court enter a judgment in her favor against the Defendants, awarding compensatory damages, attorneys' fees and costs, punitive damages against Defendants Witt and O'Shea, pre-judgment interest, and any other relief this Court deems just and appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully Submitted,

/s/ Richard Dvorak

Richard Dvorak,
One of the Attorneys for the Plaintiff

Ric hard Dvorak
Liza Vasilyeva
DVORAK LAW OFFICES, LLC
1 Walker Avenue, Suite 204
Clarendon Hills, Illinois 60514
(312) 593-7146
richard.dvorak@civilrightsdefenders.com
liza@civilrightsdefenders.com

13