SARAH AHEARN, )
)
        Plaintiff, )
)
v. )
) Case No.: 1:25-cv-13470
VILLAGE OF HOFFMAN ESTATES, ANNE )
MARIE WITT, BRIAN O'SHEA, )
)
        Defendants. )

**VILLAGE OF HOFFMAN ESTATES, ANNE MARIE WITT, &
BRIAN O'SHEA'S MEMORANDUM OF LAW IN SUPPORT OF THEIR
PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT AT LAW**

## I.     INTRODUCTION

On November 3, 2025, Plaintiff Sarah Ahearn (hereinafter, "Plaintiff" or "Ahearn") filed a complaint (hereinafter, the "Complaint") against the Village of Hoffman Estates, a municipal corporation (hereinafter, "VOHE"); Anne Marie Witt, a Hoffman Estates Police Officer (hereinafter, "Witt"); and Brian O'Shea, a Hoffman Estates Police Officer (hereinafter, "O'Shea") (collectively, "Defendants"), alleging claims that arise from a September 18, 2024 traffic stop that led to Plaintiff being charged with DUI and the statutory suspension of her license. Plaintiff's Complaint alleges that the officers, Witt and O'Shea, lacked probable cause to arrest her, thus resulting in the alleged violation of Plaintiff's constitutional rights and the malicious prosecution of Ahearn for a DUI and the suspension of her license. (*See* Doc. 1, ¶¶ 75-77).

While Plaintiff's Complaint lacks separate counts for each of Plaintiff's claims, her complaint alleges multiple constitutional claims pursuant to §1983 and state law claims against Witt and O'Shea in their official capacity and against VOHE for *respondeat superior* and as an indemnifying agent. *Id*. at ¶¶ 4-7. Plaintiff's §1983 constitutional claims include: a Fourth

1

Amendment illegal search and seizure claim against Witt; Fourteenth Amendment substantive due process claims for coerced blood and urine tests and extending her time in custody against Witt; and a failure to intervene claim against O'Shea, for his alleged failure to intervene and prevent Witt's violation of Plaintiff's rights. *Id*. at, ¶ 75. Plaintiff's state law claims include malicious prosecution claims (for both the DUI prosecution and license suspension) against Witt and O'Shea along with the derivative *respondeat superior* claims against VOHE for Witt and O'Shea's respective alleged action. *Id*. at ¶ 76-77.

Plaintiff's Complaint fails and must be partially dismissed pursuant to 12(b)(6) for the following reasons:

- Plaintiff's §1983 constitutional claims against officers Witt and O'Shea must be dismissed as the claims are improperly pled against the officers in their official capacity.

- Plaintiff's §1983 substantive due process claims for coerced blood and urine tests and extension of custody must be dismissed as they derive from Plaintiff's enumerated Fourth Amendment rights.

- Plaintiff's §1983 Failure to Intervene claim against Officer O'Shea fails as Plaintiff's alleged facts do not show or tend to show that O'Shea knew or should have known what Officer Witt observed before his later arrival at the traffic stop.

- Plaintiff's IL State Law malicious prosecution claims against O'Shea fail to state causes of action for malicious prosecution Plaintiff's Complaint fails to allege facts sufficient to establish that Officer O'Shea acted with malice.

For the reasons listed above, and as further discussed herein, this Court must dismiss Plaintiff's §1983 constitutional claims against Witt and O'Shea and her malicious prosecution claims against O'Shea (including the derivative respondeat superior claim against VOHE for O'Shea's alleged actions) pursuant to Federal Rule of Civil Procedure 12(b)(6). Furthermore, this court should grant an extension of 14 days after disposition of this motion to answer the claims not

subject to this partial motion to dismiss, or in the alternative, leave to file a partial answer to the claims not subject to this partial motion to dismiss.[1]

## II. PLAINTIFF'S FACTUAL ALLEGATIONS

On September 18, 2024, Plaintiff was driving her vehicle in Hoffman estates when she passed an intersection without coming to a complete stop. (*See*, Doc. 1, ¶¶ 8, 11). Officer Witt was near the intersection in an unmarked Hoffman Estates Police Vehicle when she saw Plaintiff pass. *Id*. at ¶¶ 9-10. After Plaintiff passed the intersection Witt activated her emergency lights and initiated a traffic stop. *Id*.at ¶ 10.[2]

Following the stop, Plaintiff told officer Witt that she was on her way to pick up her son from school, that she could not be late, and that she was having a bad day due to her sister's death by suicide two days prior. *Id*. at ¶¶ 12-13. Witt asked Plaintiff if she was taking any drugs or medication. Plaintiff told Witt that she was taking medications for depression and anxiety, but that she was able to drive on her medication. *Id*. at ¶ 16. Witt then asked Plaintiff if she had consumed alcohol that day and Plaintiff denied doing so. *Id*. at ¶ 17. During the stop, after being questioned about alcohol consumption, Plaintiff cried, pleading with Witt regarding her young son waiting alone at school waiting for his mother to pick him up. *Id*. at ¶ 18. At this time, after having already made contact with Plaintiff, Witt called for another officer to come to the scene.

Before the arrival of the second officer, Officer O'Shea, Plaintiff asked Defendant Witt for a breathalyzer test to prove that she was not under the influence of alcohol and Witt refused to administer one at that time. *Id*. at ¶21. Plaintiff alleges that during this whole initial interaction with Witt, Plaintiff was wearing sunglasses that "prevented Defendant Witt from seeing the

---

[1] The two malicious prosecution claims against Witt (the DUI prosecution and suspension of license) and the derivative respondeat superior claim against VOHE for Witt's actions are the claims not subject to the Motion.

[2] Plaintiff does not dispute that she did not come to a complete stop and that there was probable cause to stop her vehicle for the minor traffic violation. (*See* Doc. 1, ¶ 11).

Plaintiff's Eyes." *Id*. at 23. There are no allegations that O'Shea was aware of everything Witt observed prior to his arrival, including whether Witt could or could not see Plaintiff's eyes.

After O'Shea arrived, Witt performed the field sobriety test while O'Shea stood off to the side and spoke with Plaintiff's boyfriend. Plaintiff alleges that she completed the field sobriety test and that nothing about her performance on the test would have suggested that Plaintiff was under the influence of alcohol. *Id*. at ¶ 32. Plaintiff alleges that Witt then placed her in handcuffs and arrested her at 12:15 p.m. *Id*. at ¶¶ 34-35. Witt then allegedly asked Plaintiff if she would be willing to go to the hospital for a blood and urine test. *Id*. at ¶ 36. Both Witt and O'Shea spoke to Plaintiff about the blood test. *Id*. at ¶¶ 41-46. O'Shea allegedly approached Plaintiff and explained to that if she takes the test and it indicates she does not have anything in her system, "that this will help the Plaintiff in Court." *Id*. at ¶ 45.

Witt took the Plaintiff to the hospital for the urine sample and blood sample. *Id*. at ¶ 48. Plaintiff does not allege that detective O'Shea followed Witt to the hospital or was present during the blood and urine tests. At the hospital, Witt read Plaintiff the Warning to Motorist form that explained that Plaintiff's license would be suspended for 12 months if she refused the testing at the hospital. *Id*. at 50-51. Plaintiff provided a urine sample. *Id*. at ¶ 53. Allegedly, Plaintiff only reluctantly gave a blood sample to avoid the 12-month suspension to her license. *Id*. at ¶ 54.

Following the tests, but before the lab results were available, Witt charged Plaintiff with a DUI. *Id*. at ¶¶ 57-58. In the police report Witt filled out and submitted to the prosecutors she claimed that she had, "observed [the Plaintiff's] eyes to be glassy and her eyelids to be droopy,' ***upon making contact with the Plaintiff***." *Id*. at ¶ 25 (emphasis added). Plaintiff does not allege that O'Shea was present upon Witt initially making contact with the Plaintiff or that he knew whether Witt had not seen Plaintiff's eyes before his later arrival at the scene. *Id*. at ¶ 61. The same

day Plaintiff was charged, Witt allegedly also submitted the paperwork to have Plaintiff's license suspended. The results of both the urine and blood test eventually came back negative for alcohol or illegal drugs. *Id*. at ¶ 57.

On November 4, 2024, less than a month after being pulled over, Plaintiff's criminal defense attorney was successful in getting the license suspension rescinded at an evidentiary hearing where the court found no probable cause or reasonable grounds for the license suspension. *Id*. at ¶¶ 63-64. In particular, the court is alleged to have focused on the bodycam footage, which is alleged to show that Witt could have observed Plaintiff's eyes due to Plaintiff's sunglasses, thus negating the probable cause of glassy eyes and droopy eyelids. *Id*. at ¶¶ 25, 65. On April 4, 2025, the prosecutor dropped all the charges against the Plaintiff. *Id*. at ¶ 71.

## III.    LEGAL STANDARD FOR A 12(b)(6) MOTION TO DISMISS

"Dismissal for failure to state a claim under Rule 12(b)(6) is proper 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" *Virnich v. Vornwald*, 664 F.3d 206, 212 (7th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). "To survive a motion to dismiss, a complaint mut contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by *mere conclusory statements*, do not suffice." *Id* (emphasis added). Although the Court accepts factual allegations as true, "some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of the Plaintiff's claim." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, the Court "should not accept as adequate abstract recitations of the elements of a cause of action or *conclusory legal statements*." *Id*. (emphasis added).

## IV.    ARGUMENT

### a. Plaintiff's Constitutional Claims Against Witt and O'Shea, which are Alleged Against them in their Official Capacity are Improperly Pled.

Plaintiff's §1983 constitutional claims against Witt and O'Shea must be dismissed as a matter of law. Plaintiff's Complaint improperly sues the officers in their official capacity but fails to properly allege municipal liability pursuant to *Monell* as required for any suit against a state actor in his or her official capacity.

When a government official is sued in his or her official capacity, the suit "represents only *another way of pleading a claim against the entity of which the officer is an agent*." *Walker v. Jones*, 1988 U.S. Dist. LEXIS 5614, *3 (N.D. Ill. June 10, 1988) (citing *Kentucky v. Graham,* 473 U.S. 159 (1985)) (emphasis added); *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 n.55 (1978). By naming the officers in their official capacity, "a plaintiff, in essence, is suing the city, even if the plaintiff in naming the officers in their official capacity only *seeks to ensure that any judgment against the officers will be indemnified by the city*." *Id.* (emphasis added). As any suit against a state actor in his or her official capacity is the equivalent of a lawsuit against a municipality, to prevail the plaintiff must "allege and establish some municipal policy, custom, or practice that played a part in the violation of federal law." *Id*. (citing *Graham,* 473 U.S. at 166).

Plaintiff's Complaint is clearly against Witt and O'Shea in their official capacities. Plaintiff notes in the captions that each is, "A Hoffman Estates Police Officer." (*See* Doc. 1). Plaintiff also alleges that both officers Witt and O'Shea were, "acting under the color of law," and "in the course and scope of" employment with the VOHE. *Id*. at ¶¶ 5-6). Additionally, Plaintiff specifies that VOHE is "named as an indemnifying agent." *Id*. at ¶ 7. In other words, Plaintiff is naming the officers in their official capacity to ensure that any judgment against the officers will be indemnified by the city. *See Walker*, 1988 U.S. Dist. LEXIS 5614 at *3. Despite suing the

officers in their official capacity, Plaintiff does not allege a municipal policy, custom, or practice that played a part in the violation of her constitutional rights, nor does she allege any failure to train the officers. Plaintiff's allegations are solely for violation of her rights in relation to her September 18, 2024, arrest for DUI. (*See* Doc. 1).

To impose municipal liability the plaintiff "must prove that the constitutional deprivation was caused by an official municipal policy or custom." *See Kincaid v. City of Edwardsville*, 2010 U.S. Dist. LEXIS 105517, *13 (citing *Hollins v. City of Milwaukee*, 574 F.3d 822, 828 (7th Cir. 2009)).

Also, the inadequacy of police training may serve as the basis for §1983 liability, but only where the failure to train amounts to a deliberate indifference to the rights of people with whom the police come into contact. *Id.* at *12-13. Additionally, "[p]roof of deliberate indifference requires more than '[a] showing of simple or even heightened negligence.'" *Id.* at 492 (citing Jenkins, 487 F.3d 482, 492*)*.

A court may find deliberate indifference when:

[A] municipality acts with deliberate indifference when, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," that the deficiency exhibits deliberate indifference on the part of the municipal policymakers. Alternatively, we may find deliberate indifference when a *repeated pattern of constitutional violations* makes "the need for further training ... plainly obvious to the city policymakers."

*Id.* at *13-14 (quoting *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (emphasis added)).

The constitutional claims as pled fail because Plaintiff's complaint does not allege municipal liability against VOHE pursuant to *Monell*. *See Walker*, 1988 U.S. Dist. LEXIS 5614 at

*3. As a result, Plaintiff's "official capacity" claims against Witt and O'Shea are insufficiently pled and must be dismissed.

Additionally, even if Plaintiff argues that the complaint is against the officers in their personal/individual capacity, which would not require corresponding municipal liability, such claims must be explicitly stated. In the Seventh Circuit, §1983 claims that fail to, "designate expressly the nature of the suit through utilization of the terms 'official capacity' or 'individual capacity,'" are treated as "Official Capacity" lawsuits. *Kolar v. County of Sangamon*, 756 F.2d 564, 568 (7th Cir. 1985) (superseded by statute on other grounds). This is true where the Plaintiff lists the job title in the case name or body of the complaint. *Id.* It is also true if Plaintiff alleges the official acted under the color of law. *See Holly v. City of Naperville*, 571 F. Supp. 668, 673 (N.D. Ill. July 8, 1983) (where a complaint alleges conduct of an official, acting under color of state law, giving rise to liability under §1983, court will assume official was sued in an official capacity and only in that capacity). Plaintiff's complaint specifically notes that Witt and O'Shea were, Hoffman Estates Police Officers, they were "acting under the color of law", and that VOHE is an indemnifying agent for their actions. (*See* Doc. 1, ¶¶ 5-7). This Court must assume that, as pled, Plaintiff's constitutional claims against Witt and O'Shea are in their official capacity and that those claims are improperly pled. Thus, for the reasons set forth herein, this Court must dismiss Plaintiff's §1983 claims against Witt and O'Shea.

### b. Plaintiff's Substantive Due Process Claims are improperly pled.

Even if Plaintiff had properly pled official capacity claims or individual capacity claims against Witt and O'Shea, Plaintiff's substantive due process claims must be dismissed with prejudice as they are derivative of Plaintiff's Fourth Amendment claims, and a Plaintiff may not

seek recovery for unenumerated substantive rights where such rights are protected by an enumerated right.

While Fourth Amendment claims are applied against state actors through the Fourteenth Amendment Due Process clause, Substantive Due Process claims are different. They are unenumerated rights and they cannot be maintained where a specific constitutional provision already protects the right at issue. *DeLarosa v. Vill. Romeoville*, 2024 U.S. App. LEXIS 26333, *5-6 (7th Cir. 2024) (citing *Alexander v. McKinney*, 692 F.3d 553, 558 (7th Cir. 2012)).

Plaintiff's complaint alleges substantive due process claims against Witt for: 1) "violating the Plaintiff's bodily integrity through coerced blood and urine tests; and 2) "extending her time in custody." (*See* Doc. 1, ¶ 75). These claims are merely repackaged Fourth Amendment claims. The blood and urine testing is improper if it is forced upon the Plaintiff without probable cause. *See e.g.*, *Ruppel v. Ramseyer*, 33. F. Supp. 2d 720, 723-24 (C.D. Ill. January 19, 1999) (noting that blood tests are a "search" under the Fourth Amendment and are not unconstitutional if there is probable cause). Similarly, the extension of time in custody claim also derives from the alleged Fourth Amendment violation. Detaining an individual beyond what is necessary is an improper seizure of that individual. *See e.g.*, *Molina v. Latronico*, 430 F. Supp. 3d 420, (N.D. Ill. December 27, 2019) (noting that prolonging a traffic stop beyond what is necessary to effectuate the ticket is without probable cause an improper seizure of the person).

As Plaintiff's rights are already protected by her enumerated Fourth Amendment rights, Plaintiff's derivative substantive due process claims must be dismissed. For the reasons set forth herein, this Court must dismiss Plaintiff's substantive due process claims with prejudice.

   **c. Plaintiff's Cause of Action for §1983 Failure to Intervene Against Officer O'Shea Must be Dismissed.**

Plaintiff's Complaint alleges that O'Shea failed to intervene and stop Witt from violating Plaintiff's constitutional rights. Plaintiff's complaint ultimately fails to allege a proper claim for failure to intervene because she fails to allege facts that show or tend to show that Officer O'Shea knew or should have known that Witt lied about her interactions with Plaintiff after pulling her over and before he, O'Shea, arrived. Since he was not present through the entirety of the interaction with Plaintiff, O'Shea would not have known the totality of the circumstances that formed the basis for Witt's actions. As a result, Plaintiff's failure to intervene in the claim does not allege any facts that would infer that he had reason to know Witt lacked probable cause based on her early interactions with Witt.

An individual cannot be held liable in a §1983 action, "unless he caused or participated in [the] alleged constitutional deprivation." *Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996) (quoting *Wolf-Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir. 1983)). Under certain circumstances a state actor, like a police officer's, failure to intervene renders him or her culpable under §1983. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

This responsibility to intervene applies equally to supervisory and nonsupervisory officers. *Id.* An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of a citizen is liable under §1983, if that officer "had reason to know":

> (1) that excessive force was being used, (2) *that a citizen has been unjustifiably arrested*, or (3) that any constitutional violation has been committed by a law enforcement official; and the officer had a realistic opportunity to intervene to prevent the harm from occurring.

> *Id*. (citing *Anderson v. Branen*, 17 F.3d 552, 556 (2nd Cir. 1994); accord *Byrd v. Clark,* 783 F.2d 1002, 1006-07 (11th Cir. 1986).

In the matter *sub judice* the question is whether officer O'Shea had reason to know that a citizen has been unjustifiably arrested or seized. *See id*. In other words, did O'Shea's know, or should he have known, that based on the totality of the circumstances, Witt lacked probable cause to arrest Plaintiff. O'Shea was not present for the entirety of Witt's interaction with Plaintiff. Unlike failure to intervene for excessive force, where an officer may arrive late to the scene, but still sees enough to know excessive force is being used and he must intervene, the probable cause analysis is based on the totality of the circumstances, and O'Shea was not present when Witt first made contact with Plaintiff after pulling her over to just before the field sobriety test.

While O'Shea was present from the field sobriety test up until Witt handcuffed Plaintiff before she was brought to the hospital by Witt for urine and blood testing, he was not present at the outset to observe whether Plaintiff's eyes were ever uncovered such that Witt could have observed them for glassy eyes or droopy eyelids.

While Plaintiff alleges that Witt lied about her eyes in the police report, she does not allege that O'Shea knew this was a lie. Plaintiff only alleges in a conclusory manner that O'Shea failed to intervene. (*See* Doc. 1, ¶ 59), and that O'Shea knew there was no legal basis to suspend her license (*See* Doc. 1, ¶ 62). Yet, while Witt may have lacked probable cause based on the interactions between Witt and Plaintiff he observed, even Plaintiff admits O'Shea was not around for the entirety of Witt's interaction with Plaintiff.

Under Plaintiff's analysis an officer who shows up at a scene after another officer has already interacted with a citizen must intervene based on his more limited observation of the circumstances. In other words, O'Shea must either assume that Witt cannot rely on anything that occurred outside his presence to establish probable cause or he must assume officer Witt was lying about any interaction that occurred outside his presence. If he was on the scene at the same time

11

as Witt and present to make the same observations as Witt, then he could be held liable for failure to intervene as he would have known or had reason to know that Witt's reliance on seeing Plaintiff's eyes was inaccurate.

Courts tend to hold non-arresting officers liable when they are present and aware of all the interactions leading up to the illegal search or seizure. In *Yang v. Hardin*, Officers Hardin and Brown arrived at Yang's sporting goods store following a break in. 37 F. 3d at 283. Officer Brown stole some of Yang's product. *Id*. Yang intervened and officer Brown took the stolen items out of his shirt and threw them at Yang. *Id*. Hardin did nothing, despite Yang's requests, to arrest Brown. *Id*. Brown and Hardin both arrived on the scene at the same time and Hardin was present to observe Brown. He had reason to know Brown had illegally seized Yang's merchandise. Similarly in *Gagnon v. Ball*, a Second Circuit Court of Appeals cases cited by the Seventh Circuit in *Yang v. Hardin*, the Court upheld a failure to intervene when the arresting and non-arresting officer arrived on the scene at the same time and were aware of the same circumstances leading to the improper arrest of a citizen. *Gagnon v. Ball*, 696 F.2d 17, 19 (2nd Cir. 1982).

Unlike Officers Yang and Gagnon, O'Shea was not privy to the entirety of Witt's interaction with Plaintiff, nor does Plaintiff allege that he was aware of her and Witt's pre-arrival interactions or the fact that Witt allegedly lied in her police report about those interactions. As a result, based on plaintiff's Complaint, O'Shea had no reason to know that a citizen has been unjustifiably arrested. Thus, for the reasons set forth herein, Plaintiff's §1983 failure to intervene claim against O'Shea should be dismissed.

### d. Plaintiff's Complaint Fails to Properly Plead a Cause of Action for Malicious Prosecution Against O'Shea.

Plaintiff's Complaint fails to sufficiently allege a cause of action for malicious prosecution under Illinois Law against Officer O'Shea. As a result, the two malicious prosecution claims

against O'Shea and the derivative *respondeat superior* claim against VOHE must be dismissed as Plaintiff's complaint fails to allege facts sufficient to establish that O'Shea acted with malice.

To state a claim for **malicious prosecution**, a plaintiff must allege facts showing that:

(1) the defendant commenced or continued an original criminal or civil judicial proceeding; (2) the proceeding terminated in favor of the plaintiff; (3) there was an absence of probable cause for such proceeding; (4) *the presence of malice*; and (5) damages resulting to the plaintiff.

*Hurlbert v. Charles*, 238 Ill. 2d 248 (2010) (citing *Swick v. Liautaud,* 169 Ill. 2d 504, 512, 662 N.E.2d 1238, 215 Ill. Dec. 98 (1996)) (emphasis added). Malice, as an element of malicious prosecution, is defined as "the actuation of a prosecution for an improper motive." *Mack v. First Sec. Bank*, 158 Ill. App. 3d 497, (1st Dist. 1987) (citing *Glenn v. Lawrence*, 280 Ill. 581, 587 (1917); *Turner v. City of Chicago*, 91 Ill. App. 3d 931, 935 (1st Dist. 1980)). An improper motive is "any reason other than to bring the party to justice." *Id*. (quoting *Robinson v. Econ-O-Corporation, Inc*., 62 Ill. App. 3d 958, 961 (4th Dist. 1978). Malice may not be inferred from a lack of probable cause where there is no other evidence of malice. *Denton v. Allstate Ins. Co.*, 152 Ill. App. 3d 578, 587-88 (1st Dist. 1986). Furthermore, if an officer acts in good faith, he has arguable probable cause, and malicious prosecution cannot be established. *See Johnson v. Edwards*, 2024 U.S. Dist. LEXIS 45149, *34-35 (N.D. Ill. March 14, 2024).

Plaintiff's complaint contains no allegations that could be reasonably inferred to establish malice on the part of officer O'Shea. Plaintiff does not allege that he knew Witt lied about her observations prior to his arrival at the scene. At most Plaintiff alleges that based on the limited circumstances O'Shea witnessed, Witt had no probable cause to arrest Plaintiff. Since his involvement was limited, O'Shea had no basis to assume Witt's early interactions with Plaintiff couldn't establish probable cause. Good faith does not require an officer to assume that the first officer on the scene is going to lie about what happened prior to his or her arrival. Furthermore,

lack of probable cause with no other evidence of malice on the part of O'Shea cannot establish malice. *See Denton.*, 152 Ill. App. 3d at 587-88.

Thus, for the reasons set forth herein, this Court must dismiss Plaintiff's malicious prosecution claims against O'Shea, and the derivative *respondeat superior* claim against VOHE for O'Shea's alleged actions.

> **e. The Court Should Grant Defendants an Extension to Answer the Claims Not Subject to this Motion to Dismiss Until After This Motion is Decided.**

While Defendants are not seeking full dismissal of Plaintiff's Complaint at Law, this Court should extend any requirement that Plaintiff answer the claims that are not at dispute. Fed. R. Civ. Pro 12(a)(4) provides that a motion alters the period provided under Rule 12 for answering a complaint, Sub paragraph (A) of 12(a)(4) states that, "if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action."

Such an extension is the majority approach utilized by the Federal District Courts. *See, e.g., Talbot v. Sentinel Ins. Co. LTD.*, 2:11-cv-01766, 2012 U.S. Dist. LEXIS, *9-11 (D. Nev. Mar. 29, 2012) (finding that the majority approach amongst the District Courts is that the rule under 12(a)(4) applies to partial motions to dismiss and adopting the majority position as a piecemeal approach would create duplicative sets of pleadings and would cause confusion). This approach promotes judicial economy as it prevents a, "procedural thicket of piecemeal answers." *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 366 (E.D.N.Y. 2009). This majority approach also avoids a situation where the parties are at issue before the Court decides which claims/counts subject to the motion are sufficient under Rule 12(b)(6).

The majority approach has been adopted by courts in the District Court of the Northern District of Illinois. In *Intercom Ventures, LLC*, the court held that because defendants filed a Rule

12(b)(6) motion that did not challenge all of plaintiff's claims, the defendants were not required to file an answer to the remaining count until 14 days after the courts order on the defendant's partial motion to dismiss. 2013 U.S. Dist. LEXIS 75032 at *18. (N.D. Ill. May 28, 2013). Inally, as Plaintiff's Complaint is not organized around self-contained counts for each claim or set of claims it makes sense to avoid piecemeal answers in this matter.

For the foregoing reasons, Defendants request that the Court grant an extension of 14 days, following resolution of their Partial Motion to Dismiss Plaintiff's Complaint for Defendants to answer the claims not subject to their partial motion to dismiss. In the alternative, if this Court does not adopt the majority approach, Defendants seek leave to file their partial answer to the Plaintiff's claims that are not the subject of their Partial Motion to Dismiss.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court, pursuant to Fed. R. Civ. P 12(b)(6), GRANT their Motion and: dismiss Plaintiff's §1983 Fourth Amendment claims; dismiss Plaintiff's §1983 substantive due process claims with prejudice; dismiss Plaintiff's failure to intervene and malicious prosecution claims against O'Shea; and grant an extension of 14 days after disposition of this motion to answer the claims not subject to this partial motion to dismiss, or in the alternative, leave to file a partial answer to the claims not subject to this partial motion to dismiss; and for any other relief that this Court finds fair and equitable.

Dated: January 9, 2026,                                      Respectfully submitted,

*/s/ Paul Bozych*
Paul Bozych - pbozych@nzalaw.com
Eric J. Meli - emeli@nzalaw.com
Frank N. DeBoni - fdeboni@nzalaw.com
NIELSEN, ZEHE & ANTAS, P.C.
55 West Monroe Street, Suite 1800
Chicago, Illinois 60603
(312) 322-9900
***Attorneys for Defendants***